No. 3082

**Second Circuit**

____

## LINDSEY WAGON CO. v. LOUISIANA & ARKANSAS RY. CO.

____

(July 5, 1930. Opinion and Decree.)
(July 31, 1930. Rehearing Refused.)

____

Foster, Hall & Smith, of Shreveport, attorneys for plaintiff, appellant.

White, Holloman & White, of Alexandria, attorneys for defendant, appellee.

ODOM, J. The plaintiff shipped a wagon, valued at $230, to A. E. Morgan Lumber Company, over defendant's line of railroad, and paid the freight charges, amounting to $16.45. The wagon was never delivered to the consignee, and this suit is by the shipper against the carrier to recover the value of the wagon, plus the freight charges paid. Plaintiff's demands were rejected by the district court, and it appealed.

Appellee filed a motion in this court to dismiss the appeal on the ground that the transcript was not lodged in this court in time. As we think the judgment should be affirmed, we shall not notice the motion to dismiss.

The plaintiff sold a wagon to A. E. Morgan Lumber Company, said to be located at Coldwater "Spur," Tex., and shipped it by freight over defendant's line of railroad. Mr. Gibbs, who seems to have had charge of plaintiff's office in Shreveport, made out a bill of lading designating the Texas & Pacific Railway Company as the carrier, A. E. Morgan Lumber Company, as the consignee, and Coldwater Spur, La., as the destination.

The wagon and the bill of lading were carried to the local shipping station of the Texas & Pacific by the Caddo Transfer & Warehouse Company, as the agent of the shipper. When the freight and bill of lading were delivered to the agent of the Texas & Pacific, the shipment was refused on the ground that there was no station on that line of railroad by that name. He suggested, however, that the freight be carried to the Louisiana & Arkansas Railroad, which was done by the transfer company.

On looking over the bill of lading made out by the shipper, the agent of the Louisiana & Arkansas discovered that the carrier designated was the Texas & Pacific but that the name of that company had been scratched out or erased which he understood to mean that the shipment had been refused by that road. He then consulted what is referred to as a shipping guide, approved by the Interstate Commerce Commission and used by all railroads, and found that the Texas & Pacific had no shipping station named Coldwater Spur, but that there was a shipping point, named Coldwater, on the line of the Louisiana & Arkansas located in Louisiana. He says that he knew the station called Coldwater on the Louisiana & Arkansas was not what is called an open station, where an agent is maintained, but was a prepay station on a spur track, and he inferred that the shipper intended that the freight be delivered there, and accepted the shipment.

The transfer man who carried the wagon and the bill of lading to the Louisiana & Arkansas gave the agent no information as to the destination of the freight, and the agent made no inquiries, but got his information as to the place of delivery from the freight bill made out by the shipper, and, as stated, the destination therein indicated was **Coldwater Spur, La.** The freight was carried to Coldwater, La., and there unloaded on the spur track. There was no one there to receive it and it was left unattended. How long it remained there or what became of it, no one seems to know, but it is admitted that the consignee did not get it. Mr. Gibbs, who made out the bill of lading for the shipper, says he intended to ship the goods to Coldwater **Spur, Tex., but that by inadvertence** and error he wrote the word "Louisiana" instead of the word "Texas." He says further that there was at the time a shipping station on the line of the Texas & Pacific, named "Coldwater Spur," in Texas. But he was in error on that point. The post office address of the consignee may have been Coldwater Spur, Tex., but there was no such shipping point on either line of railroad at that time, either in Louisiana or Texas.

In a later edition of the shipping guide gotten out in March after this shipment was made in December, there was designated on the Texas & Pacific line a station by that name in Texas, and it appears that the plaintiff later consigned other freight to the A. E. Morgan Lumber Company, at that place.

The burden of plaintiff's complaint against the carrier in this case is that the shipper made an error in directing the shipment, which error was or should have been obvious to the carrier's agent who should have, before accepting the goods, communicated with the shipper in order to get more definite instructions as to the place of delivery, and that the agent's failure to do so renders the carrier liable. It is unquestionably true that, where shipping instructions are not clear, or where there is an obvious error in the directions

given by the shipper as to the destination of the freight, it is the duty of the carrier or its agent to hold the goods, except in cases of emergency, and ask further instructions from the shipper, and that its failure to ask further instructions and more specific directions in such cases is a breach of duty which may render it liable in case of loss on account of such misdirection.

The rule is stated as follows in 10 Corpus Juris, p. 120, under the general heading, Carriers, subheading, Misdirection:

"(Sec. 146) (4) Misdirection. If the loss of the goods, or the delay or injury, due to the inherent nature of the goods, resulting from the delay, is due to improper marking or direction as to their destination, the carrier is not liable. Furthermore the consequence of defective marking will be charged to the shipper, although the direction of the package may have been written out by the carrier's agent, where, in so doing, he acted under the direction of the shipper. Nevertheless, where shipping instructions are not clear, it is the carrier's duty, unless an emergency arises, to hold the goods and ask for instructions from the shipper. And in order to exempt the carrier from liability, the loss must have resulted from the negligent misdirection of the shipper alone, unaided by a breach of duty on the part of the carrier or its agent; and if the carrier itself has been guilty of some negligent act or omission without which, notwithstanding the fault of the shipper, the loss would not have occurred, it will be liable. And it has been held that a carrier is liable for loss of goods notwithstanding misdirection, where it was not misled by such misdirection; where the carrier undertakes the duty of transportation, knowing that the goods were consigned to a point that had no existence in fact; where, by the exercise of ordinary diligence, the carrier could have ascertained the proper direction; or where it in fact knew the proper direction. * * *"

The question, therefore, is whether there was an obvious error in the shipping directions given by the shipper or an obvious misdirection of the freight such as to put the agent of the carrier on notice, and whether, under the facts here presented, it was the agent's duty to hold the goods and make further inquiry. We do not think so. The carrier was directed by the shipper in the bill of lading made out by it to deliver the goods to the consignee at Coldwater Spur, La. The carrier had no station on its line named "Coldwater Spur," but did have one named "Coldwater" in Louisiana, and it was a blind, prepay station, where all freight consigned to that place was unloaded on a spur track. We think the conclusion reached by the carrier's agent that the shipper intended that this freight be delivered at Coldwater, La., was reasonable. He knew that the shipment had first been tendered to the Texas & Pacific and refused, and, on investigation, he found that the Texas & Pacific had no station on its line named "Coldwater," or "Coldwater Spur," and he concluded that the shipment was then tendered to the Louisiana & Arkansas because it did have a station named "Coldwater." Mr. Gibbs testified that there was a "Coldwater Spur" on the Texas & Pacific in Texas, and counsel argue that the agent of the Louisiana & Arkansas should have known that, or could have ascertained the fact by investigating, and that his knowledge of that fact and his seeing that the freight was consigned to "Coldwater Spur, La.," when there was no such station in Louisiana, but one of that name in Texas, were sufficient to put him on notice that there was or might have been an error in the shipping directions. Counsel's point might be well taken if there had been in fact a station named "Coldwater Spur" on either line of railroad, either in Louisiana or Texas. But there

was not. There was not a "Coldwater" or "Coldwater. Spur" on the Texas & Pacific either in Louisiana or Texas. The only place called "Coldwater" was on the Louisiana & Arkansas line, and that was in Louisiana, and that was in fact, although not so designated in the shipper's guide, a "spur" station. The shipper directed that the freight be delivered in Louisiana, and, under the circumstances, we think the carrier was guilty of no fault in this respect.

In support of this contention, counsel cite the case of Williams-Richardson Co., Ltd., v. New Orleans & N. E. Ry. Co., 165 La. 33, 115 So. 358, 359, where the court said:

"* * * When it becomes obvious to the carrier or its agent that a mistake has been made in directing a shipment, both good faith and reasonable prudence dictate that the shipment shall be held and inquiry made of the consignor for more complete and definite instructions. In such cases, it is not for the carrier or its agent to venture a guess as to what destination or what consignee the shipper intended and then to forward or to deliver the shipment according to said guess."

This holding is in exact accord with the text quoted above from Corpus Juris. But the facts in the Williams-Richardson case, supra, are altogether different from those in the case at bar. There the goods were consigned by the shipper to W. H. McGee & Co. at Prentiss, Miss., whereas Purvis, Miss., was intended. There were both a Prentiss and a Purvis in Mississippi. The goods were forwarded to Prentiss. There was no firm styled "W. H. McGee & Company" at Prentiss, but there was one there styled "J. T. McGee & Company," which firm, to the knowledge of the agent, had received previous shipments from the same shipper and he had never heard of W. H. McGee & Co. He assumed or "guessed" that the shipper had made an error in the initials and delivered the shipment to J. T. McGee & Co. The Court held that the goods were plainly addressed to W. H. McGee & Co., and, as there was no such firm as that at Prentiss, the agent at the point of delivery should not have guessed or assumed that the shipper had erred in the initials of the firm and delivered the "shipment according to said guess."

There is a manifest distinction between that case and the one at bar.

It is further contended that the carrier in this case was at fault in unloading the shipment without there being present any one to receive it. We find no merit in this contention. The shipper knew that the shipment was to be delivered at a non-agency station. It prepaid the freight for that reason. The bill of lading contains the following provision:

"(f) Property destined to or taken from a station, wharf or landing at which there is no regular appointed freight agent, shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and except in case of carrier's negligence, when received from or delivered to such staions, wharves or landings shall be at owner's risk until the cars are attached to and after they are detached from locomotive or train or until loaded into and after unloaded from vessels."

The judgment appealed from is affirmed, with costs in both courts.